# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD LANE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 08-4151 |
| JOHN E. POTTER, POSTMASTER GENERAL, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

RONALD L. BUCKWALTER, S.J.                                                                 March 17, 2010

Currently pending before the Court is the Motion for Summary Judgment by Defendant John E. Potter, Postmaster General for the United States Postal Service. For the following reasons, the Motion is denied.

### I. FACTUAL BACKGROUND

The core of the dispute before the Court focuses on Plaintiff Donald Lane's unsuccessful bid for a promotion with his employer, the United States Postal Service ("USPS"). Plaintiff Donald Lane is an African-American male who first joined USPS in May of 1986 as a mail processor. (Def.'s Mot. Summ. J., Ex. B, Dep. of Donald Lane ("Lane Dep.") 9:23-10:2, Aug. 11, 2009) He served in that position until February 1987, when he was reassigned, upon request, to the Transportation Department. (Id. at 10:4-19.) He worked as a motor vehicle operator for about five months, and was then promoted to tractor-trailer operator. (Id. at 10:20-25.) To date, he has remained in the position of tractor-trailer operator. (Id. at 11:13-12:1.) In 2003, Plaintiff made a formal application and was hired to go on temporary detail as an acting (as opposed to permanent)

supervisor.  (Id. at 31:19-35:5.)  With the exception of a brief period in 2004 or 2005, he served in that capacity until December 2007, when the temporary details of Plaintiff and seven other individuals were cancelled to return them to their duties as drivers.  (Id. at 31:19-35:5, 40:5-41:1; Def.'s Mot. Summ. J., Ex. D, Decl. of Joseph Quinn ("Quinn Decl.") ¶¶ 23-28, Jan. 28, 2010.)

At the time relevant to the Complaint, Joseph Quinn was the Manager of Transportation Networks for the United States Postal Service in the Philadelphia Processing and Distribution Center ("Philadelphia Center"), and had served in that position from November 1999 until his retirement in July 2009.  (Quinn Decl. ¶ 1.)  Quinn reported to Paul Zavorski, who served as Manager of Transportation Networks, and when Zavorski left, Quinn took over his role in an acting capacity.  (Id. ¶ 2.)  Quinn's responsibilities involved overseeing all incoming and outgoing mail to and from his district, coordinating all deliveries to and from the Philadelphia Center, hiring and supervising the supervisors or acting supervisors of Transportation Operations, and overseeing the supervision of 189 USPS drivers.  (Id. ¶ 3.)

### A.      Plaintiff's First Application for a Promotion (Supervisor Position E-06687)

In late 2006, a vacancy was posted for the position of Supervisor of Transportation Operations (Supervisor position E-06687) in the Philadelphia Center.  (Def.'s Mot. Summ. J., Ex. G.)  Although Quinn participated in the interviews of the candidates for that position, Zavorski was the deciding official.  (Quinn Dep. 115:3-12 and Ex. 1.)  Quinn had no input into the selection or rejection of candidates for that position.  (Id. at 115:13-15; Def.'s Mot. Summ. J, Ex. E, Decl. of Andrea Robinson ("Robinson Decl."), ¶ 9, January 2010.)

Plaintiff applied for this position and was interviewed.  (Quinn Decl. ¶ 5.)  Ultimately, however, Zavorski awarded it to Karen Scannell, a Caucasian woman.  (Id.)  Plaintiff pursued no further course with respect to the position.

### B.     Plaintiff's Second Application for a Promotion (Supervisor Position E-07831)

On August 28, 2007, a vacancy announcement was posted for a Supervisor of Transportation Operations position (E-07831) for Tour 3 on weekdays at the Philadelphia Center.[1]  (Quinn Decl. ¶¶ 5-6 & Ex. 2.)  Quinn was the selecting official for this position.  (Id. ¶ 5.)

Initially, five USPS employees applied for the vacancy:  (1) Plaintiff, an African-American male; (2) Michael Blancuzzi, a Caucasian male; (3) Sylvia Holley, an African-American female; (4) Rafael Munoz, a Hispanic male; and (5) D.C. Starling, an African-American female.  (Id. ¶ 7.)  Before interviews even started, Mr. Munoz withdrew his candidacy.  (Id.)

Although Leo Lepczyk, the Operations Manager under Quinn, attended the ensuing interviews, the hiring decision remained entirely in the hands of Quinn.  (Id. ¶¶ 8-9.)   During the interviews, each candidate was asked the same substantive questions.  (Quinn Dep. 34:10-11; Quinn Decl. ¶ 9 & Ex. 3.)  Additionally, the applicants were told that there would be another vacancy opening for the position of Supervisor of Transportation Operations for Tour 1, and were asked if they would be interested in that position.  (Quinn Decl. ¶ 10.)  All of the applicants indicated that they were.  (Id.)

Quinn eventually chose Michael Blancuzzi for the promotion to Tour 3 Supervisor of Transportation Operations.  (Quinn Decl. ¶ 12.)  In his subsequent deposition, Quinn explained that, as the Manager of Transportation Operations, he had the opportunity to observe Supervisors of Transportation Operations who reported to him, including acting supervisors Blancuzzi and Plaintiff.  (Id. ¶ 11.)  He chose Blancuzzi because "he was the most qualified candidate."  (Id. ¶ 12.)  Although both Lane and Blancuzzi had the requisite qualifications and experience, Quinn was

---

[1]  According to the record, the workday at the USPS is divided into three time shifts or "Tours."  Tour 1 runs from 11:00 p.m. until 7:30 a.m.  Tour 2 runs from 7:00 a.m. until 3:30 p.m.  And Tour 3 runs from 3:00 p.m. until 11:30 a.m.  (Quinn Decl. ¶ 4.)

impressed with Blancuzzi's work ethic, willingness to volunteer for additional responsibilities and assignments, and willingness to volunteer for weekend or holiday work. (Id.; Quinn Dep. 66:11-67:3.) Quinn further indicated that he did not select Plaintiff because Plaintiff often did not want to work Sundays or too many holidays unless he had to, and did not volunteer his services or time as readily as Blancuzzi. (Quinn Decl. ¶ 12; Quinn Dep. 65:9-68:2.) To contradict Quinn's claimed rationales, Plaintiff testified at his deposition that he often worked weekends, never turned down overtime, and never refused a request to come in early or stay late. (Lane Dep. 217:5-218:12.)

At Quinn's direction, Lepczyk sent a form letter to all the unsuccessful candidates, including Plaintiff, indicating that they had not been selected for the position. (Quinn Decl. ¶ 13.) The letter encouraged all candidates to apply for future vacancies. (Id. Ex. 5.) Plaintiff testified that, upon learning of the decision, a lot of guys at work, many of them Caucasian, were walking around saying, "You got screwed. You got f–ed." (Lane Dep. 77:21-25, 78:20-79:4.)

C.  **Plaintiff's Meeting With Quinn Regarding the Promotion Decision**

After receiving the rejection letter in October 2007, Plaintiff harbored some concern about the propriety and basis of this decision. (Quinn Decl. ¶ 14.) As such, he went to see Quinn in his office, at which time Lepczyk was also present. (Id.; Lane Dep. 156:13-25; Quinn Dep. 106:13-107:11.) Plaintiff asserted that, in light of his longer length of service with USPS, he believed he deserved the job and was displeased with the decision to promote Blancuzzi instead of him. (Lane Dep. 156:13-25.) Quinn responded that it was a difficult decision and that Plaintiff was well-qualified, but that Blancuzzi ranked as the better candidate. (Quinn Decl. ¶ 14; Lane Dep. 152:2-11.) He further explained that he used a rating system to tally points and that Blancuzzi had probably a "point" higher than Plaintiff. (Quinn Dep. 82:4-20.) He also encouraged Plaintiff to

4

apply for other supervisor spots, including the one that would be opening soon.[2] (Id.)

The focus of the meeting then turned to Plaintiff's prior unsuccessful application in early 2007 for Supervisor position E-06687. (Lane Dep. 152:12-17.) Plaintiff commented that he is a non-biased, non-prejudiced, and fair person and that is the way he prefers to be treated. (Lane Dep. 97:2-4; 152:18-21.) At that point, according to Plaintiff, Quinn "spun around" and said that "Karen Scannell got promoted because she was white. How do you feel about that?" (Lane Dep. 97:7-11, 152:18-25.) Plaintiff simply responded, "Joe [Quinn], how do you expect me to feel?" (Lane Dep. 97:13.)

In his deposition, however, Quinn testified that he never made any statement that Karen Scannell had been given any position "because she was white." (Quinn Dep. 107:20-108:3.) Nor did he recall Lepczyk making any such statement. (Quinn Dep. 108:19-22.) Quinn averred that Plaintiff's allegation was "completely untrue," that he chose the best candidate for the E-07831 position, and that to make any statement like the one described by Plaintiff would be both wrong and "career suicide" at USPS. (Quinn Decl. ¶¶ 15-16.) Moreover, Quinn emphasized that he did not make the decision to hire Ms. Scannell; rather that decision fell solely within Zavorski's responsibility. (Id. ¶ 17.) Finally, Quinn, stated that during his tenure with USPS, he has promoted seven African-Americans, as compared to three Caucasians and one Latino. (Id. ¶ 18.)

D. **Procedural History**

On October 26, 2007, Plaintiff requested pre-complaint counseling with a Dispute Resolution Specialist from the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mot. Summ. J., Ex. H.) His petition claimed that he was denied promotion to the Supervisor position E-07831 because he was a black male. (Id.) Subsequently, on January 19, 2008, Plaintiff

---

[2] Plaintiff never applied for that position. (Lane Dep. 77:18-78:5.)

filed his formal EEO Complaint of Discrimination by the Postal Service, alleging race discrimination. (Pl's Resp. Mot. Summ. J, Ex. A.) The EEOC issued a final agency decision on May 29, 2008, finding no discrimination as alleged. (Def.'s Mot. Summ. J., Ex. J.)

On August 27, 2008, Plaintiff filed the current federal action. The Complaint set forth a cause of action for discrimination under Title VII of the Civil Rights Act, as well as a claim of retaliation due to his complaints about the discrimination. Defendant filed the Motion for Summary Judgment on January 29, 2010 and Plaintiff responded on February 26, 2010, withdrawing his claim of retaliation, but maintaining his discrimination claim.

## II. STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkt., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his

6

favor." Anderson, 477 U.S. at 255; El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999). The mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson, 477 U.S. at 249.

## III. DISCUSSION

In the current Motion for Summary Judgment, Defendant moves to dismiss the remaining Title VII discrimination claim against it.[3] In doing so, Defendant first argues that Plaintiff cannot rely on or otherwise defeat summary judgment based on the alleged statement by Quinn regarding the hiring of Scannell because it constitutes inadmissible hearsay. Second, Defendant claims that once this statement is eliminated, Plaintiff is unable to produce any evidence to rebut Defendant's legitimate, non-discriminatory reasons for promoting Blancuzzi over Lane. The Court addresses each of these contentions individually.

---

[3] Because Plaintiff has voluntarily withdrawn his retaliation claim, (Pl's Resp. Mot. Summ. J. 11), the Court need not address it.

A. **Whether Quinn's Alleged Statement Regarding the Hiring of Karen Scanell Is Admissible Evidence that May Be Considered on Summary Judgment**

The first issue the Court must address is whether Plaintiff can rely on Quinn's statement regarding Karen Scanell to defend against summary judgment.[4] Defendant now claims that this statement is inadmissible hearsay that may not be considered on a motion for summary judgment.

Upon a motion for summary judgment, a court considers the non-moving party's *admissible* evidence. Celotex, 477 U.S. at 327. To be considered at this stage, the non-moving party's evidence need not be in a form that would be admissible at trial, but it must be evidence that could be later presented in a form that "would be admissible at trial" or reducible to admissible form. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990) (citing Williams v. Borough of West Chester, Pa., 891 F.2d 458, 466 n. 12 (3d Cir. 1989)). A hearsay statement that is not capable of being admissible at trial, should not be considered on a summary judgment motion. Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999); Herring v. De. County, No. CIV.A.07-4395, 2009 WL 750189, at *4 (E.D. Pa. Mar. 20, 2009).

As noted above, the disputed evidence at issue is Plaintiff's deposition testimony that, during his meeting with Quinn and Lepczyk, Quinn stated that Scannell was hired for the E-06687 position because she "is white." This statement falls within the most basic definition of hearsay, which, as described by Federal Rule of Evidence 801, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801. Plaintiff clearly offers this statement to prove the truth of the matter asserted – that a hiring decisions in USPS was made on the basis of race. Moreover, the record contains no

---

[4] The Court remains cognizant that Quinn denies making this statement. On a motion for summary judgment, however, the Court must resolve all factual disputes in the light most favorable to Plaintiff. El, 479 F.3d at 238. As such, for purposes of this Motion only, the Court will assume that the statement was made as described by Plaintiff.

admissible deposition or other affidavit from Quinn conceding that he made this statement. Accordingly, under the Federal Rules of Evidence, Plaintiff's description of Quinn's words is generally not admissible. FED. R. EVID. 802.

The Court's inquiry as to admissibility, however, does not end at this juncture. The Federal Rules of Evidence provide that some statements which, on their face, would be excludable under Rule 802, may fall either within one of the categories of "non-hearsay" set forth in Rule 801, or within one of the recognized hearsay exceptions of Rules 803 and 804. See FED. R. EVID. 801, 803, 804. In this case, the Court recognizes that Quinn's statement fits neatly within the confines of Rule 801(d)(2)(D), which excludes from the definition of "hearsay" a statement "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2)(D). By the express terms of this provision, the party offering the statement must establish: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that the statement relates to a matter within the scope of the agency." Fitzpatrick v. The Home Depot, U.S.A., Inc., No. CIV.A.06-3624, 2007 WL 2071894, at *1 (E.D. Pa. Jul. 18, 2007).

Although Defendant does not dispute that Quinn was a servant of USPS or that the alleged statement would have been made during the course of his employment, it argues that Plaintiff "cannot establish that the statement was made concerning a matter within the scope of Quinn's employment with USPS at that time," because "Quinn was not the selecting official for the E-06687 Supervisor position; Paul Zavorski was." (Def.'s Mem. Supp. Mot. Summ. J. 10.) This contention, however, "rests on the mistaken premise that personal involvement in the employment decision being litigated is an absolute prerequisite to the admission of a statement by an employee against his employer under Rule 801(d)(2)(D)." Marra v. Philadelphia Housing Auth., 497 F.3d 286, 297 (3d

9

Cir. 2007). In Marra, two plaintiffs brought a suit against defendant Philadelphia Housing Authority ("PHA") claiming that they had been retaliated against for testifying against the PHA in a previous case. Id. at 295. During the trial, one of the employees indicated that his supervisor had previously communicated to him that anyone testifying against the Philadelphia Housing Authority ("PHA") during that prior litigation would face repercussions. Id. at 297. Because the declarant supervisor had no involvement in the adverse employment actions taken against the plaintiffs, the defendant argued that the statement concerned matters beyond the scope of the supervisor's employment and, thus, did not fall within Rule 801(d)(2)(D). Id. The Third Circuit rejected this argument and recognized that while being a direct decisionmaker is strong proof that the statement was made within the scope of employment, "the 'scope of employment' criterion [of Rule 801(d)(2)(D)] extends beyond direct-decisionmakers." Id. at 297-98 (quoting Carter v. Univ. of Toledo, 349 F.3d 269, 275 (6th Cir. 2003)). Citing to a previous decision, it reiterated that

> "[w]here a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing compensation, and the like is admissible against the employer," regardless [of] whether the declarant has any involvement in the challenged employment action.

Id. at 298 (quoting Abrams v. Lightolier, 50 F.3d 1204, 1215 (3d Cir. 1995)). The Third Circuit found that, because the supervisor was authorized to speak with his subordinates about his perception of PHA's practices, formal or otherwise, his opinion that employees who testified adversely to PHA would face "repercussions" concerned a matter within the scope of his employment. Id. at 298-99. Ultimately, the court held that "[w]hile the jury was certainly free to consider [the supervisor's] non-involvement in the challenged employment decisions in determining how much weight to give his remarks (if credited), his lack of participation in these decisions did not

10

render his 'opinion regarding company policy' beyond the purview of Rule 801(d)(2)(D)." Id. at 299; see also Simple v. Walgreen Co., 511 F.3d 668, 672 (7th Cir. 2007) (holding that in African-American assistant store manager's race discrimination action stemming from his failure to be promoted to manage store in predominately Caucasian area, another store manager's statement that store where Caucasian manager was hired was "not ready to have a black manager" and that plaintiff "may not have been very happy working there" was an admission by employer because it was a statement about matter within scope of store manager's employment).

Similarly, in the case at bar, the evidence is undisputed that although Quinn had no decision-making authority with respect to Supervisor position E-06687, Quinn participated in the interviews of the candidates for that position. (Quinn Dep. 115:3-12 & Ex. 1.) Quinn thereafter assumed the role of direct decisionmaker for Supervisor position E-07831. During the October 2007 meeting regarding the latter position, Quinn was authorized, as Plaintiff's direct supervisor, to speak with subordinates about USPS's employment practices. Quinn's alleged statement that Karen Scannell was hired because she was white constituted his perception of USPS's employment practices as to hiring and promotions. Plaintiff's subsequent deposition testimony repeating this statement was, in turn, "'a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like.'" Marra, 497 F.3d at 298 (quoting Abrams, 50 F.3d at 1216).

Under express Third Circuit precedent, Quinn's alleged statement falls within the bounds of Rule 801(d)(2)(D) and is, therefore, not hearsay.[5] Accordingly, the Court considers this statement

---

[5] The Court acknowledges its comment in the January 29, 2010 Order that the statement was inadmissible and that Defendant's brief correctly set forth the law as to hearsay. That statement, however, was made without proper consideration of either Plaintiff's Response brief or the legal foundation for Defendant's argument. Having granted Plaintiff's Motion for Reconsideration, the Court now revises its original determination as to the admissibility of this statement.

when ruling on Defendant's Motion for Summary Judgment.[6]

B.      **Whether Plaintiff's Discrimination Case Survives Summary Judgment Review**

Disparate treatment claims are analyzed under the burden shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Pursuant to that framework, plaintiffs alleging race-based employment discrimination must first establish a prima facie case by showing: (1) that they are members of a protected class; (2) that they are qualified for the position; (3) that they suffered an adverse employment action; and (4) that the action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. Id. at 410-11; see also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000), aff'd, 29 Fed. Appx. 100 (3d Cir. 2000).

If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Jones, 198 F.3d at 410. The burden on the defendant at this juncture is "relatively light," and the defendant can satisfy it "by introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason *actually* motivated its behavior, as through this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id.

---

[6] Plaintiff also argues that the statement falls within two exceptions to the hearsay rule: the state of mind exception under Fed. R. Evid. 803(3) and the present sense impression exception under Fed. R. Evid. 803(1). Having found that the statement is not hearsay, the Court does not address these arguments.

12

Once the defendant articulates such reasons, the burden reverts back to plaintiff, who must show by a preponderance of the evidence that those legitimate reasons were a pretext for discrimination. Id. In order to defeat a summary judgment motion, the plaintiff must produce evidence which would allow a factfinder "reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Id. (internal citations omitted); see also Robinson v. Matthews Intern. Corp., No. CIV.A.09-1965, 2010 WL 763869, at *3 (3d Cir. Mar. 8, 2010). Notably, "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). Indeed, because discriminatory conduct is often subtle and difficult to prove, a plaintiff may rely on circumstantial evidence to establish both racial animus and pretext. Id. Where the issue of pretext turns on the credibility of the competing testimony, a request for summary judgment must be denied. Id.

In an effort to further define the boundaries of the pretext inquiry at the summary judgment stage, the Third Circuit has emphasized that the plaintiff must "point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Under the first method, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them 'unworthy of credence' and hence infer that 'the employer did not act for [the asserted] non-discriminatory reasons.'" Id. (internal citations omitted); see also Gilbert v. Philadelphia Media Holdings, 564 F. Supp. 2d 429, 434 (E.D. Pa. 2008). Unless

there is evidence of discrimination, the court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992).

"Alternatively, through the second method outlined in Fuentes to prove that the defendant's proffered legitimate and non-discriminatory reason is merely pretext, a plaintiff could show that invidious discrimination was more likely than not a motivating or determinative factor in the defendant's adverse employment action." Gilbert, 564 F. Supp. 2d at 434 (citing Fuentes, 32 F.3d at 764). In other words:

> the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision. For example, the plaintiff may show that the employer has previously discriminated against [him or her], that the employer had discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.

Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998) (internal citations omitted).

In the present case, Defendant, solely for purposes of summary judgment, proceeds under the assumption that Plaintiff has established his prima facie case. Accordingly, the Court begins the analysis by inquiring into whether Defendant has met its burden of offering legitimate, non-discriminatory reasons for not promoting Plaintiff to Supervisor position E-07831. According to the record, Quinn testified that Blancuzzi, while Acting Supervisor, worked weekends and all three Tours, came in early and stayed late if needed, and would volunteer his services for anything the management needed done. (Quinn Dep. 60:13-19; Quinn Decl. ¶ 12.) Further, Blancuzzi had an outstanding interview and presented himself in a knowledgeable and professional manner. (Quinn

Dep. 60:20-21; Quinn Decl. ¶ 12.) On the other hand, Quinn indicated that while Plaintiff was Acting Supervisor, he did not want to work on Sundays or too many holidays unless required. (Quinn Dep. 65:9-14; Quinn Decl. ¶ 12.) If he came in early, he would leave after eight hours and would never stay late to accommodate the USPS. (Quinn Dep. 65:18-66:5; Quinn Decl. ¶ 12.) Moreover, although Plaintiff would take on additional tasks if asked, he gave off the impression that he did not want to do such tasks and he never volunteered his services. (Quinn Dep. 66:11-68:24; Quinn Decl. ¶ 12.) The Court finds that such rationales clearly qualify as legitimate, non-discriminatory reasons for Defendant's decision to promote Blancuzzi over Plaintiff.

As such, the burden shifts back to Plaintiff to prove that the stated reasons for the hiring decision were merely pretext for discriminatory animus. In order to prove pretext, Plaintiff relies on evidence under both methods outlined in Fuentes. Under the first category of Fuentes evidence, he claims that Defendant's proffered reasons are "unworthy of credence." He notes that, during the course of his deposition, he repeatedly testified that he never turned down a request to cover for somebody else or to do overtime hours, and that he was very flexible. (Lane Dep. 63:4-64:1.) In addition, Plaintiff stated that he worked significant amounts of overtime, worked many weekends and holidays, and would come in early and stay late to accommodate management. (Id. at 216:25-218:12.) He could not recall a single instance where he turned down a request to do additional overtime or to cover a shift when he was acting supervisor. (Id. at 63:23-64:1.) Moreover, Plaintiff testified that he "personally" never saw Blancuzzi volunteer for any tasks or overtime, but knew that Blancuzzi was working a lot of overtime when Plaintiff was not even being asked. (Id. at 200:24-201:10; 201:16-22.))

Such evidence, however, does not meet Plaintiff's burden. As the Third Circuit has noted,

15

"[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765; see also Langley v. Merck & Co., Inc., 186 Fed. Appx. 258, 261 (3d Cir. 2006). In other words, a plaintiff who seeks to prove pretext through the first method outlined in Fuentes must show that the employer's proffered reason "was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

Plaintiff cites no evidence – be it direct or circumstantial – that lends any ground to his contention that Defendant's reasons are not credible. Primarily, Plaintiff testified only that he worked a lot of overtime, weekends, and holidays and did not personally see Blancuzzi do anything additional. Plaintiff fails, however, to produce any evidence or testimony – either from himself or from anyone else at USPS – that he worked *equal or more* time than Blancuzzi, that he was *more* willing to take on additional work than Blancuzzi, or even that he *volunteered* his additional time. As such, in its current form, Plaintiff's deposition does not disprove Quinn's statement that Blancuzzi was more likely than Plaintiff to volunteer his time for additional work. Moreover, the Third Circuit has emphasized that an employer is permitted "to take an adverse employment action for a reason that is not 'true' in the sense that it is not objectively correct." Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 222 (3d Cir. 2000); see also Wildi v. Alle-Kiski Med. Ctr., 659 F. Supp. 2d 640, 669 (W.D. Pa. 2009). The employer needs only an honest or sincere belief that its reasons are correct. Watson, 207 F.3d at 222. Thus, even had Plaintiff demonstrated that he was as zealous an employee as Blancuzzi, he has failed to produce any evidence that Quinn's stated reasons

for his promotion decision were not based on an honest belief.[7] As no legal standard otherwise precludes an employer from promoting an employee who takes more initiative in his or her work over one who is more complacent, the Court finds that Plaintiff's first argument does not establish pretext.

Plaintiff's proof under the second category of Fuentes evidence, however – a showing that invidious discrimination was more likely than not a motivating or determinative factor in the defendant's adverse employment action – goes significantly further in meeting his burden. As discussed in detail above, Plaintiff has produced admissible evidence that Quinn stated, with respect to Supervisor Position E-06687, that the incumbent was given that position because she "is white."

---

[7] Plaintiff makes a somewhat convoluted argument that "Quinn's statement that he did not consider either Plaintiff's or Mike Blancuzzi's education, training or postal positions in making his decision to hire either Plaintiff or Mike Blancuzzi, stands in complete contrast to his duty to inquire into the education, training or prior postal positions enumerated in Requirements section of the Supervisor Transportation Operations position, otherwise identified as Position Number E-07831." (Pl's Resp. Mot. Summ. J. 9-10.) He goes on to argue that "[i]f the qualifications in terms of expertise and training are the proper criteria for selection, a reasonable jury may draw the conclusion that Plaintiff's race may have been a factor in the admitted failure by Quinn to consider those qualifications in selecting the white male, Mr. Blancuzzi, over Plaintiff." (Id. at 10.)
     This argument is misplaced. The Third Circuit has held that, in determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action. Ezold, 983 F.2d at 528 ("[w]here an employer produces evidence that the plaintiff was not promoted because of its view that the plaintiff lacked a particular qualification the employer deemed essential to the position sought, a district court should focus on the qualification the employer found lacking in determining whether non-members of the protected class were treated more favorably.") As such, neither the employee's qualifications in another category nor the employee's judgment as to the importance of the stated criterion are relevant. Id.; Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988).
     With that in mind, Plaintiff's suggestion that he was more qualified than Blancuzzi in terms of education and experience does not end the inquiry. Plaintiff must point to evidence from which a factfinder could reasonably infer either that Quinn's stated reasons were blatantly false or that Quinn did not actually rely upon that criteria. Fuentes, 32 F.3d at 767.

That statement characterized Quinn's perception – be it correct or incorrect – about USPS's promotion practices and is circumstantial evidence of both the basis for the E-06687 promotion decision and the general atmosphere in which USPS made its employment decisions.  See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995) (evidence of discriminatory remarks by a supervisor, even though he was not responsible for the decision to terminate plaintiff, are probative of a discriminatory attitude and improper motive and are admissible to prove a circumstantial case of discrimination); Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 641 (3d Cir. 1993) ("court may also consider as circumstantial evidence the atmosphere in which the company made its employment decisions.").  Because Quinn subsequently acted as the decisionmaker for Supervisor position E-07831, his statements also constitute direct evidence that race may have also motivated his decision to hire Blancuzzi over Plaintiff.  See Abrams, 50 F.3d at 1214-15 (age-related comments by supervisor were probative of supervisor's attitude towards older workers and were admissible to prove improper motive for decision to discharge older worker); Khair v. Campbell Soup Co., 893 F. Supp. 316, 332-333 (D.N.J. 1995) (while stray remarks about race may be irrelevant when made by non-decisionmakers, it is erroneous to dismiss them when the speaker was a decisionmaker and at least one comment was contemporaneous with employment decision at issue; jury must decide whether they are discriminatory or innocuous).

Defendant attempts to rebut this evidence by noting that Quinn's alleged statement is "completely inconsistent with [his] undisputed record of promoting African-Americans during his USPS career."  (Def.'s Reply Br. 7.)  The Court acknowledges the evidence that, during his tenure, Quinn has promoted seven African-Americans to supervisor positions – several of whom were in competition with Caucasian men – while only promoting three Caucasians, and one Hispanic

individual. (Quinn Decl. ¶¶ 18-22.) Such contrary evidence, however, does nothing more than create a genuine issue of material fact as to Quinn's true motivations. While an inference in favor of Plaintiff may not withstand a full trial on the merits and a jury's credibility determinations, the Court is not permitted to make the inherently factual determination of whether Defendant's enumerated reasons for the adverse employment decision were pretextual.

## IV. CONCLUSION

In light of the evidentiary conflict that remains in this case, the Court cannot grant summary judgment in favor of Defendant. Accordingly, Defendant's Motion is denied in its entirety.